```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :    22cv1912 (DLC)
VICTORIA N. GARCIA,                    :
                                       :
                    Plaintiff,         :    OPINION AND ORDER
                                       :
               -v-                     :
                                       :
REBECCA MINKOFF LLC and SUNRISE        :
BRANDS, LLC,                           :
                                       :
                    Defendants.        :
                                       :
-------------------------------------- X
```

APPEARANCES:

For the plaintiff:
Charles Law, P.C.
Fred Victor Charles
1612 Central Ave, Ste 4th Floor
Far Rockaway, NY 11691

For defendant Sunrise Brands, LLC:
Law Office of Marc M. Isaac PLLC
Marc Monoah Isaac
34 Willis Avenue
Mineola, NY 11501-4406

DENISE COTE, District Judge:

    Victoria Garcia has brought an employment discrimination action against her employer Rebecca Minkoff LLC ("Minkoff") and Sunrise Brands, LLC ("Sunrise"), which acquired Minkoff after Garcia left its employ.  An Order of default has been entered against Minkoff.  Sunrise has moved to dismiss the claims against it, all of which were pleaded on the basis of successor liability.  The motion is granted in part.

## Background

The following facts are taken from the second amended complaint ("SAC"). For the purposes of deciding this motion, the SAC's factual allegations are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor.

In November 2019, the plaintiff was hired to be the Social Media Manager at Minkoff. The plaintiff's employer of record was Justworks Employment Group LLC ("Justworks"), a professional employer organization that provides payroll and other services to small and medium sized businesses. Minkoff is a limited liability company whose principal place of business is located on West 22d Street in Manhattan. Minkoff is a "premier fashion brand," and Rebecca Minkoff, the chief creative officer ("CCO") of Minkoff, was the plaintiff's direct supervisor. Minkoff received millions of dollars from the Paycheck Protection Program in 2020 and 2021 after reporting a total of 136 jobs on its payroll.

In June of 2020 and in June and July of 2021, the plaintiff sought accommodations from Minkoff for her mental health. Minkoff never provided the plaintiff with FMLA certification forms and improperly denied her requests for unpaid medical leave to seek treatment for her mental health. On July 16, 2021, Minkoff discharged the plaintiff. On December 2, the

plaintiff received a notice of right to sue from the Equal Employment Opportunity Commission ("EEOC").

On a date not identified in the SAC, Sunrise acquired Minkoff for between $13 and $19 million. Through an asset purchase, Minkoff is now a "wholly owned subsidiary" of Sunrise. Sunrise is a fashion company with offices in California and New York. Rebecca Minkoff continues her role as the CCO of Minkoff. Since the acquisition, many of the same employees have continued to work at Minkoff at the same offices in Manhattan. The Minkoff website continues to exist, and the company makes "substantially the same products." The SAC asserts that Garcia will have difficulty obtaining relief from Minkoff "due to the structure of Sunrise's asset purchase."

The plaintiff filed this action pro se on March 4, 2022 against Minkoff. After the plaintiff retained counsel, she amended her complaint and added Sunrise and Justworks as defendants. The plaintiff voluntarily dismissed her claims against Justworks on July 13. The plaintiff then requested leave to file the SAC "to clarify" and "strengthen" her claims against Sunrise "as successor-in-interest" to Minkoff. The Court granted the request and dismissed the pending motion to dismiss which had been filed by Sunrise.

The SAC was filed on August 29. The SAC alleges that the defendants discriminated and retaliated against her in violation

3

of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the New York State Human Rights Law ("NYSHRL"), Executive Law § 290 et seq., and the New York City Human Rights Law ("NYCHRL"), Administrative Code of the City of New York § 8-107 et seq.

On September 30, Sunrise moved again to dismiss the SAC under Rule 12(b)(6), Fed. R. Civ. P. The motion became fully submitted on November 4. On November 18, an order of default was entered against Minkoff.

## Discussion

To survive a motion to dismiss for failure to state a claim, the complaint "must plead enough facts to state a claim to relief that is plausible on its face." Green v. Dep't of Educ. of City of New York, 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Charles v. Orange County, 925 F.3d 73, 81 (2d Cir. 2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the

plaintiffs." Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." Hamilton v. Westchester County, 3 F.4th 86, 91 (2d Cir. 2021) (citation omitted).

Sunrise argues that the SAC fails to state a claim for the successor liability of Sunrise. Before addressing whether the SAC adequately pleads successor liability under the ADA, FMLA, and state and city law, the law of successor liability generally will be described.

I. Successor Liability Generally

Successor liability "is an equitable doctrine, not an inflexible command." N.Y. State Teamsters Conf. Pension & Retirement Fund v. C&S Wholesale Grocers, Inc., 24 F.4th 163, 177 (2d Cir. 2022) (citation omitted). "Consequently, fairness is a prime consideration in successorship's application." Steinbach v. Hubbard, 51 F.3d 843, 846 (9th Cir. 1995) (citation omitted).

> Under the general common law rule, a corporation that merely purchases for cash the assets of another corporation does not assume the seller corporation's liabilities. However, the Supreme Court has imposed liability upon successors beyond the bounds of the common law rule in a number of different employment-related contexts in order to vindicate important federal statutory policies.

5

N.Y. State Teamsters, 24 F.4th at 176.

Federal courts have recognized successor liability under federal employment law statutes, such as the Fair Labor Standards Act, 9 U.S.C. § 206, et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the FMLA. Id. at 176-77; see also Battino v. Cornelia Fifth Ave., LLC, 861 F.Supp.2d 392, 403 (S.D.N.Y. 2012) (collecting cases).

There are two tests generally used by courts to determine successor liability: the traditional common law rule and the substantial continuity test. Under the traditional common law rule,

> a buyer of a corporation's assets will be liable as its successor if: (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.

New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006) (citation omitted).

Under the "substantial continuity" test, two elements must be shown: "(1) a successor must have notice of its predecessor's liability, and (2) there must be substantial continuity of identity in the business enterprise." N.Y. State Teamsters, 24 F.4th at 177 (citation omitted). "The principle reason for the notice requirement is to ensure fairness by guaranteeing that a successor had an opportunity to protect against liability by

6

negotiating a lower price or indemnity clause." Steinbach, 51 F.3d at 847. To establish substantial continuity, courts consider:

> whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers.

N.Y. State Teamsters, 24 F.4th at 177 (citing Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 43 (1987)). The substantial continuity test was developed in the labor and employment law context to ease the harshness of the traditional common law rule. E.E.O.C. v. Roark-Whitten Hospitality 2, LP, 28 F.4th 136, 147 (10th Cir. 2022).

The SAC does not adequately plead that Sunrise was a successor of Minkoff under the traditional common law rule. Accordingly, this Opinion will apply the substantial continuity test where appropriate.

II. ADA

The Second Circuit has not addressed the issue of successor liability under the ADA. Nor have other federal courts of appeal. At least one district court in the Second Circuit has applied the substantial continuity test to an ADA claim. See Abdel-Khalek v. Ernst & Young, L.L.P., No. 97cv4514 (JGK), 1999 WL 190790, at *7 (S.D.N.Y. Apr. 7, 1999).

The SAC fails to state a claim for successor liability under the ADA because it does not adequately plead notice. The SAC alleges that the plaintiff was fired on July 16, 2021, received her notice of right to sue letter from the EEOC on December 2, 2021, and filed this complaint on March 4, 2022. It does not indicate when Sunrise purchased Minkoff, although the fair inference is that the purchase occurred after Minkoff fired the plaintiff.

"Although it is true that matters peculiarly within a defendant's knowledge may be pled 'on information and belief,' this does not mean that those matters may be pled lacking any detail at all." First Cap. Asset Mgmt., Inc. v. Satinwood, 385 F.3d 159, 179 (2d Cir. 2004). Here, there are no facts pleaded to create a plausible inference that Sunrise had notice that the plaintiff had filed or even that she might file a claim against Minkoff before it purchased Minkoff's assets. The SAC's conclusory allegation that "routine diligence" would have given Sunrise notice does not bridge this gap. While the SAC adequately pleads that there was substantial continuity in Minkoff's business identity after it was purchased by Sunrise, the lack of notice is fatal to the successor liability claim under the ADA.

III. FMLA

The motion to dismiss the FMLA claim is denied. Under the FMLA, "any successor in interest of an employer" can be liable as an employer. 29 U.S.C. § 2611(4)(A)(ii)(II). While the FMLA does not define the term "successor in interest," the Department of Labor has issued a regulation defining the term. See, e.g., Sullivan v. Dollar Tree Stores, 623 F.3d 770, 780 (9th Cir. 2010); Cobb v. Cont. Transp., 452 F.3d 543, 550-51 (6th Cir. 2006).

In order to determine whether an entity is a successor in interest to another employer, the following factors are considered:

> (1) Substantial continuity of the same business operations;
> (2) Use of the same plant;
> (3) Continuity of the work force;
> (4) Similarity of jobs and working conditions;
> (5) Similarity of supervisory personnel;
> (6) Similarity in machinery, equipment, and production methods;
> (7) Similarity of products or services; and
> (8) The ability of the predecessor to provide relief.[1]

29 C.F.R. § 825.107(a). These factors must be considered in the totality of the circumstances. Id. § 825.107(b). The crux of

---

[1] The term "plant" in the second factor comes from the manufacturing labor context of the early cases dealing with successor liability, and courts have noted that this factor should be read more broadly to include an employer's facilities. See Sullivan, 623 F.3d at 784-85.

the inquiry is "whether the new business is essentially the same as the old business." Sullivan, 623 F.3d at 781.

Analyzing the relevant factors under the totality of the circumstances, the SAC plausibly alleges that Sunrise is a successor in interest for purposes of the FMLA. The SAC alleges that after the acquisition, Minkoff continued its business as a wholly owned subsidiary of Sunrise. Ms. Minkoff remained the CCO of Minkoff, Sunrise used the same website and offices for Minkoff, Sunrise retained Minkoff employees, and it manufactured the same kind of apparel. These facts plausibly allege that Sunrise and Minkoff were essentially the same when it came to the supervisory personnel, workforce, facilities, and products.

Sunrise argues that SAC does not plead that Sunrise was involved in the discriminatory acts. Under its implementing regulations, the FMLA does not require that the successor entity participate in the alleged conduct to be held liable.

IV. NYSHRL and NYCHRL

As the parties appear to agree, New York law governing successor liability is the same as the traditional common law test. New York, 460 F.3d at 209. Under New York law, a corporation that purchases the assets of another corporate is "generally not liable for the seller's liabilities." Id. Nonetheless,

> a buyer of a corporation's assets will be liable as its successor if: (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.

Id.; see also Schumacher v. Richards Shear Co., Inc., 59 N.Y.2d 239, 245 (1983). The second and third tests -- de facto merger and the mere continuation -- are so similar that courts consider them a single exception. Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 n.3 (2d Cir. 2003). Only the second and third tests need be explored here; there is no allegation in the SAC to implicate the first and last tests.

"[A] de facto merger occurs when a transaction, although not in form a merger, is in substance a consolidation or merger of seller and purchaser." New York, 460 F.3d at 209 (citation omitted).

> At common law, the hallmarks of a de facto merger include: (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation.

Id. While each of these four factors "distinguish mergers from asset sales, continuity of ownership is the essence of a merger." Cargo Partner AG, 352 F.3d at 47.

The SAC fails to state a claim of successor liability under the NYSHRL and NYCHRL. The SAC does plausibly plead that a de facto merger occurred; it does not plead continuity of ownership. This failure requires dismissal. See Kind Operations Inc. v. AUA Priv. Equity Partners, LLC, 150 N.Y.S.3d 246, 247 (1st Dep't 2021).

## Conclusion

Sunrise's September 30 motion to dismiss is granted in part. The motion is granted as to the ADA, NYSHRL, and NYCHRL claims. The motion is denied as to the FMLA claim.

Dated:   New York, New York
         March 1, 2023

            _____
                  DENISE COTE
            United States District Judge